# CASES DETERMINED

# August Term, 1884.

SEVERIN, Administrator, etc. vs. RUECKERICK.

*November 29 — December 16, 1884.*

DEBTOR AND CREDITOR: FRAUDULENT CONVEYANCE. *(1) Instruments construed together. (2) Conveyance construed: Trust for maintenance of parents, etc. (3) Increase in property conveyed.*

| 62 | 1 |
|---|---|
| 82 | 399 |
| 62 | 1 |
| 86 | 375 |
| 62 | 1 |
| 102 | 28 |
| 102 | 29 |
| 62 | 1 |
| 117 | ²439 |
| 117 | ²443 |

1. A conveyance of land and a bill of sale of personal property which are founded upon a single agreement and are part and parcel of the same transaction, will be construed together and will have the same effect as though embodied in a single instrument.

2. A conveyance of land and personal property by a father to his son upon condition that the son give to the parents one half of the buildings and one half of all the crops raised on the land during their lives, and one third of the avails of the land to the survivor of them, that he pay certain sums to his sister and brother after the death of the parents, and that he pay a mortgage upon the land, is *held* to have created a trust in the property for the maintenance of the parents and the payment of the sums specified, and to have been void, under sec. 2306, R. S., as against the creditors of the father. The fact that the son had previously made advances of money to the father does not change the character of the conveyance.

3. The increase of live stock conveyed in fraud of creditors, belongs, as to such creditors, to the vendor.

APPEAL from the Circuit Court for *Calumet* County.

This is an action of replevin brought by the plaintiff against the defendant to recover the possession of certain personal property described in the complaint, consisting prin-

cipally of farming utensils, horses, cows, and young stock. The defendant answered a general denial, and that the property claimed belonged to him.

The claims of the respective parties to the property are based upon the following facts:   In 1880 the defendant, the adopted son of the plaintiff's intestate, entered into an agreement with the intestate by which the latter was to convey to him all his real estate, together with one span of horses, three cows, and all the farming implements which the intestate then owned.   The intestate thereupon executed a conveyance, dated in May, 1880, of all his real estate to the defendant, and also, at the same time, a bill of sale to him of the personal property above mentioned.   The conveyance, next after the granting clause, contains the following: " Upon the express condition that the said party of the second part, his heirs or assigns, hereby agrees that he will give to the said parties of the first part one half of the buildings on the above-described premises, and one half of all the crops raised on the above-described lands, during their life, and if one of the said parties of the first part dies, then one third of the avails of said land.   The said party of the second part further agrees to pay to his sister Catharina Rueckerick the sum of $1,085, and to his brother Phillip Rueckerick the sum of $285, five years after the decease of both parties of the first part.   Also to liquidate a mortgage of $346 and interest on the same, being on the above-described lands." The personal property described in the bill of sale included all owned by the intestate not exempt from seizure on execution, except, perhaps, a cow.   Phillip Rueckerick, the intestate, died in June, 1882.   The plaintiff was appointed administrator of the estate by the county court, and duly qualified as such.   Two claims against the estate were allowed by the county court: one in favor of one Miller, for $347.10, and the other in favor of one McMullen, for $39.64. The debt to Miller was contracted by the intestate before,

and that to McMullen after, he conveyed his property to the defendant. After due demand upon the defendant for the property described in the complaint, and his refusal to deliver it, the plaintiff brought this action to recover possession thereof.

Upon the above facts, which appeared on the trial, the court directed a verdict for the plaintiff for the value of the property in suit, stipulated to be $600. The ground upon which the court gave this direction is that the transfer or assignment of his property by the intestate to the defendant was made in trust for the use of the intestate, and was therefore void as against the creditors, existing or subsequent, of the intestate, under the statute of frauds. R. S. sec. 2306. The court said: "The legal effect of this agreement was the division of the property of this man Phillip Rueckerick among his children, with a reservation and a trust for his own benefit. It seems that the girl has not had quite as much as the boy, and she was to have $1,085 out of the property. The other boy being older, some thirty years, for some reason, perhaps because he had had more before, was not entitled to so much; therefore he took $200 or $300. This defendant had helped the old gentleman along by sending him money occasionally from Chicago, amounting to some $600 or $700; consequently that must be provided for, and the balance be his share, must go to him; therefore he got the largest slice out of the value of this property, with a trust reserved that the old man was to have the use and occupation of one half of the buildings, and was to have one half of all the crops. It did not say wheat or corn, but everything that was raised upon the place. Now we have this statute, all deeds and all conveyances and all transfers or assignments, verbal or written, of goods, chattels, or things in action, made in trust for the use of the person making the same, shall be void as against creditors, existing or subsequent, of such person. I think

from the evidence here clearly without dispute, and by the evidence of the defendant alone, that the transaction was a conveyance directly designed to be prevented by this section of the statute, because, if a man can do this and thereby cut off his creditors, every other man can do it with the same propriety. It was purely and clearly a division of the property among his children. It was not a sale. There was no such thing as a question of fraud against creditors; no such thing as change of possession and good faith in the purchase, because there was no purchase. It was a conveyance or transfer or assignment by the way of a gift. It was without consideration. The $700 which he had advanced before was simply taken out of his share of the property of the old man in order to regulate the amount which he should receive, and to designate the amount which he should pay to the other children after the old man's and old lady's death. That being my view of the case, I see nothing to submit to the jury except the question of the value of the property. Perhaps I ought to add, for the benefit of the parties interested, that I do not decide at all that as among themselves, among the heirs, that this arrangement of Phillip Rueckerick could be disturbed at all. That, undoubtedly, is a binding contract so far as they are concerned. It is only void, in my judgment, as against creditors, but his debts must be paid if he has got property, whether it be real or personal."

Judgment for the plaintiff having been entered pursuant to the verdict, the defendant appeals therefrom.

The cause was submitted for the appellant on the brief of *Edw. S. Bragg*, of counsel.

For the respondent there was a brief by *Hudd & Wigman*, and oral argument by *Mr. Hudd*.

LYON, J. This action was brought under sec. 3832, R. S., which gives a right of action to an executor or administra-

tor, in case of a deficiency of assets in his hands to pay the creditors of the estate, to recover property conveyed by the testator or intestate in his life-time, when by law such conveyance is void as against creditors.

In the present case there is such deficiency of assets, and the question to be determined is whether the conveyance of his property by the intestate to the defendant is void as against the creditors of the estate.

The conveyance of the real estate and the bill of sale of the personal property, although separate instruments, are founded upon a single agreement, and are part and parcel of the same transaction. They are therefore to be construed together as evidences of one agreement, and their effect is the same as it would have been had the whole agreement been embodied in a single instrument.

Disregarding mere form, and looking only to the substance of the transaction, as it is our plain duty to do, the conveyance of his property by the intestate to the defendant created a trust in the property conveyed for the support and maintenance of the intestate and his wife during their lives, or during the life of either of them, and for the payment of specified sums of money, after their decease, to their other children. True, the condition expressed in the conveyance is not, in form, for such maintenance, but that is its plain and obvious import. Had the defendant failed to furnish the intestate and his wife the stipulated buildings, and to deliver to them the stipulated proportion of crops raised on the farm, thus depriving them of the means of subsistence, a court of equity would promptly have rescinded the conveyance and restored the property to the intestate. *Bogie v. Bogie*, 41 Wis. 209; *Bresnahan v. Bresnahan*, 46 Wis. 385; *Bishop v. Aldrich*, 48 Wis. 621; *Blake v. Blake*, 56 Wis. 392; *Delong v. Delong*, 56 Wis., 514.

The condition for the payment of the specified sums to all the other children is an express trust created by the intestate

in their favor, and is a charge upon the property conveyed, which a court of equity would undoubtedly enforce. There can be no difference in principle between such a provision in a deed and a similar provision in a will. Had the intestate devised and bequeathed all of his property to the defendant, requiring him to pay the same amounts to his brother and sister, those amounts would be a charge upon the property taken by the defendant under the will. *Powers v. Powers*, 28 Wis. 659.

Such being the character and effect of the conveyance by the intestate to the defendant, it seems very clear that the same was a conveyance or transfer of his property by the intestate in trust for his own use, and hence that, under sec. 2306, R. S., the same is void as against his creditors, existing or subsequent. The learned circuit judge substantially so held, and we think he ruled correctly. To uphold this conveyance would be to allow the intestate to place his property beyond the reach of his creditors, before and after his death, and at the same time to secure a maintenance for himself and wife during their lives, and the payment of legacies or gifts to his children out of the property after their deaths. The statute was enacted to prevent just such a fraud as this. The fact that the defendant had previously made advances of considerable sums of money to the intestate does not change the character of the conveyance, or strengthen his title to the property as against such creditors.

It is believed that the foregoing observations dispose of all the errors assigned, save one, which will now be considered.

The defendant moved for a new trial on the ground, among others, that the court erred in refusing to submit the evidence to the jury, and here assigns for error the refusal to grant a new trial. Under this assignment of error it is now claimed that there was testimony tending to show that a portion of the property recovered by the plaintiff was pur-

Severin, Adm'r, etc. vs. Rueckerick.

chased by the defendant elsewhere, and absolutely owned by him. Apparently, this is the first time in the progress of the case that point has been made. We have examined the testimony bearing upon this question, and we think it was conclusively proved that all of the property recovered by the plaintiff was held by the defendant under the conveyance by the intestate to him.

The testimony on the subject was all given by the defendant, and is very brief. To the question as to whether the property in controversy was the same property he received from his father under the bill of sale he answered: "It is the same property — some of it — in the replevin suit; there is some stock that I raised myself and some of the personal property that I bought afterwards. In the suit there are four young cattle that I raised, and one that I bought. I bought it from George Thedy; I paid $27 for it — $27 or $27.50. There was a cow and a calf that I bought." This was on his direct examination. On his cross-examination he said: "Those five head of young stock in dispute belong to me. I raised them. . . . I raised them from the cows that I bought from my father. They were the increase of those cows that I bought of my father. The five head of young stock was the increase from the cows that I bought." It will be seen that the defendant only claimed that he bought one of the young cattle from any person other than his father. He says he bought a cow and a calf, but fails to say that his father was not the vendor thereof. On his cross-examination he changed his testimony as to his alleged purchase from Thedy, and testifies that the five head of young cattle which the plaintiff recovered in the action were all of them the increase of the cows conveyed to him by the intestate. As to creditors such increase belonged to the estate. We think the motion for a new trial was properly denied.

The judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.